

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*Paul E. Budlow*  
*Assistant United States Attorney*  
*Paul E. Budlow@usdoj.gov*

*Suite 400*  
*36 S. Charles Street*  
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4917*  
*MAIN: 410-209-4800*

October 29, 2018

Kirstin Hopkins, Esquire  
Office of the Federal Public Defender  
100 South Charles Street  
Tower II, Suite 1100  
Baltimore, Maryland 21201

Re:  United States v. Glen Ranger, Criminal #: RDB-18-340

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by Friday, November 2, 2018, at 5:00 p.m., it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

1.  The Defendant agrees to plead guilty to Counts One and Four of the Indictment now pending against him, each charging him with Production of Child Pornography, in violation of 18 U.S.C. § 2251(a). The Defendant admits that he is, in fact, guilty of the offense and will so advise the Court.

### Elements of the Offense

2.  The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

That on or about the dates specified in Counts One and Four of the Indictment, in the District of Maryland, and elsewhere, the Defendant:

   a.  Knowingly employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct;

  b. For the purpose of producing a visual depiction of such conduct; and

  c. The Defendant had reason to know that the visual depiction would be transported in interstate commerce, said visual depiction was transported in interstate or foreign commerce, or the materials used to produce the visual depiction were transported in interstate commerce.

Penalties

3. The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MANDATORY MINIMUM IMPRISONMENT | MAXIMUM IMPRISONMENT | MAXIMUM SUPERVISED RELEASE | MAXIMUM FINE | SPECIAL ASSESSMENT |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 2251(a) | 15 years | 30 years | Life | $250,000 | $100/$5,000 (18 U.S.C. § 3014) |
| 4 | 18 U.S.C. § 2251(a) | 15 years | 30 years | Life | $250,000 | $100/$5,000 (18 U.S.C. § 3014) |

  a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

  b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

  c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

  d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

  e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

  f. Collection of *Debts*: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is

nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Sex Offender Registration and Additional Special Assessment

4. The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crimes to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

### Waiver of Rights

5. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

    a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

    d. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to

confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

      e.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

      f.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

      g.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

      h.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

      i.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

6.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C.   §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

7.      This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree to the following Sentencing Guidelines:

### Count One:

   a.    The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

   b.    Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense. (Subtotal: 36).

   c.    Pursuant to U.S.S.G. § 2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact. (Subtotal: 38).

   d.    This Office and the Defendant agree that the following sentencing guideline factor is in dispute: Whether there should be an increase of two (2) levels pursuant to U.S.S.G. § 2G2.1(b)(5), because the minor was in the care, custody, or supervisory control of the defendant. (Subtotal: 38 or 40).

### Count Four:

   e.    The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

   f.    Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense. (Subtotal: 36).

   g.    Pursuant to U.S.S.G. § 2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact. (Subtotal: 38).

   h.    This Office and the Defendant agree that the following sentencing guideline factor is in dispute: Whether there should be an increase of two (2) levels pursuant to

U.S.S.G. § 2G2.1(b)(5), because the minor was in the care, custody, or supervisory control of the defendant. (Subtotal: 38 or 40).

Grouping:

 i. This Office and the Defendant agree that as detailed in Attachment A, because the defendant produced images of child pornography of John Doe on at least three occasions, there are three groups for production of child pornography.

 j. Pursuant to U.S.S.G. §§ 3D1.2(d) and 3D1.4, sexual exploitation of the same minor victim on different days does not group, there are therefore 3 units, and the highest offense level (38 or 40) is increased by three (3) levels. (Subtotal: 41 or 43).

 k. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's acceptance of personal responsibility for the Defendant's conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

 l. Accordingly, the adjusted base offense level is **38** or **40**.

Chapter Four Enhancement:

8. The Office and the Defendant agree that the following sentencing guidelines factor is in dispute: Whether there should be an increase of five (5) levels pursuant to U.S.S.G. § 4B1.5(b) and Application Note 4(B), because the instant offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct. Thus, the anticipated final offense level is at least 38 or as high as 45.

9. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

10. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

11. This Office will recommend that the Court impose a sentence of fifty (50) years of incarceration.

12. This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office deems relevant to sentencing. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

13. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent such challenges legally can be waived.

    b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever lawful sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release); except as follows:

        i. The Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds any sentence within the advisory guidelines range resulting from an offense level of 38.

    c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

14.   a.     The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

      b.     Specifically, but without limitation on the government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities including:

          i.     The following items originally seized by the Easton Police Department from 102 Calvert St Easton, MD 21601, that were in the Defendant's storage unit:

            1. eMachines Desktop Computer SN# QLM2130001056;
            2. Fujifilm XD Card, serial # 8si623ba443;
            3. Geek Squad flash drive, serial # BE0807NHDB;
            4. Three (3) Maxell flash drives;
            5. Dane-Elec flash drive;
            6. SanDisk flash drive, serial # SDCZ35002G.
            7. Nineteen (19) VHS Tapes;

          ii.     The following items seized from Glenn RANGER on April 4, 2018, at 1350:

            8. One (1) Black/blue cell phone, SN# 110021017226328.

      c.     The Defendant agrees to consent to the entry of orders of forfeiture for the property described in the two above subparagraphs and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

      d.     The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

      e.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct

appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Restitution

15. The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses. The defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Defendant's Conduct Prior to Sentencing and Breach

16. a. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

b. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made

pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

17. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

18. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

By: _____
Paul E. Budlow
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

___11/1/18___  
Date

_____  
Glenn Ranger

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

___11/1/18___  
Date

_____  
Kirstin Hopkins

## Attachment A

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Glenn Ranger ("Ranger"), age 56, is a resident of Glen Burnie, Maryland. As detailed below, Ranger sexually abused John Doe, a prepubescent minor, and produced images and videos of himself and John Doe engaged in sexually explicit conduct.

John Doe was born in the fall of 1994. From approximately no later than 2004 through no sooner than 2005, John Doe and his mother lived with Ranger at Ranger's residence in Glen Burnie, Maryland. Ranger frequently took John Doe into his bedroom and gave him pornographic magazines. After showing John Doe the pornographic magazines on multiple occasions, Ranger began to perform oral sex on John Doe, and cause John Doe to perform oral sex on Ranger. The sexual abuse occurred while John Doe's mother was either out of the home, or downstairs in the home. John Doe was unaware that Ranger was recording the abuse.

In July 2014, Ranger leased a storage unit in Pasadena, Maryland. After failing to pay the monthly rent for the unit, the contents were purchased at auction by a resident of Easton, Maryland in March 2018. After observing the nature of the contents of Ranger's belongings, the resident turned over Ranger's belongings to law enforcement, and the items were searched pursuant to valid search warrant.

The contents of Ranger's storage unit included computers and other digital devices, numerous VHS tapes, framed photographs, and binders. The binders contained printed and organized images of child pornography erotica. The framed photographs also included 5 images of child pornography, including images of John Doe produced by Ranger. The printed images of John Doe included 2 images of John Doe fully nude, with an erect penis, and three images that are close up photos of John Doe's penis.

The digital devices were forensically examined. At least 7 of the items contained child pornography, child erotica, and age-difficult pornography. Over 200 images of child pornography were found located on these devices, as well as over 10,000 child exploitive/age difficult images.

1

The VHS tapes were examined, and two of the tapes contained videos of Ranger sexually abusing John Doe on three separate occasions. The videos were all filmed by Ranger and occurred in his bedroom at his residence in Glen Burnie, and are described below:

Incident 1 (Counts 1, 2, and 3):

The recording is approximately 30 minutes in length. In the video, John Doe is naked on the bed when Ranger gives John Doe a pornographic magazine. Ranger, dressed, masturbates John Doe and then performs oral sex on John Doe. During the video, Ranger uses a digital camera to take photographs depicting John Doe's naked body, as well as close up photographs of John Doe's exposed penis. Ranger takes off his pants and has John Doe perform oral sex on Ranger. John Doe appears to be watching television while Ranger is masturbating. At one point, John Doe is standing naked on the bed while Ranger performs oral sex on John Doe.

The digital images Ranger produced during this incident were produced on a Fuji Film Finepix digital camera and were located on Fujifilm XD Card, serial # 8si623ba443 in Ranger's storage unit. The files indicate that they were produced on April 1, 2005, when John Doe was 10 years old.

Incident 2 (Count 4):

The videos of the abuse in incidents 2 and 3 are both on the same VHS tape, which is a different VHS tape from Incident 1. The recording of Incident 2 is approximately 45 minutes in length. John Doe is noticeably older looking in Incident 2 than Incident 1. In the recording, John Doe is wearing a shirt and his pants are at his ankles. John Doe is not wearing glasses. Ranger gives John Doe a pornographic magazine and then takes off his (Ranger's) pants, exposing his erect penis. John Doe reads the pornographic magazine while on top of Ranger while Ranger touches John Doe's penis. Ranger masturbates John Doe, and then performs oral sex on John Doe. Then Ranger positions John Doe on top of him, both of them facing up, with their genitals in contact, and Ranger rubs his penis on John Doe's anus. John Doe performs oral sex on Ranger.

Incident 3 (Count 5):

Incident 2 is followed by a recording of an unrelated incident with Ranger and another individual in Ranger's bedroom, which is then followed by Incident 3. The recording is approximately 45 minutes in length. Ranger's hair in clean cut and noticeably shorter than in Incident 2. Ranger is initially wearing a black shirt and blue jeans. Ranger gives John Doe a pornographic magazine and begins to masturbate John Doe. Ranger then performs oral sex on John Doe. Ranger used his penis to rub John Doe's anus several times. John Doe sits on top of

Ranger as Ranger rubs his penis on John Doe's buttocks. Ranger and John Doe then masturbate each other.

### Ranger's Arrest and Statement:

On April 4, 2018, Ranger was arrested, was advised of his Miranda rights, and provided a voluntary statement to investigators. When Ranger was searched incident to arrest, Ranger's wallet contained a photograph of John Doe and his family.

Ranger made the following statements during the interview:

- Ranger admitted that the contents of the storage unit were his;
- Ranger stated that he printed the child pornography from his computer, approximately 15 years ago;
- Ranger admitted that his computer contained digital files of child pornography;
- Ranger initially stated that he had never had sex with anyone under age 16 and that he was not attracted to individuals that young;
- Ranger admitted to engaging in sex acts with a boy;
- Ranger stated that while he was showering, the boy came into the shower with him and that the boy threatened to tell his mother about it unless Ranger performed oral sex on the boy;
- Ranger felt blackmailed so he complied with the boy's demand;
- Ranger stated that the only sex acts were him performing oral sex on the boy, and that it happened on four separate occasions; and
- Ranger said that the conduct was only recorded because his video camera was motion activated.

At the time of his arrest, Ranger was in possession of a "BLU" mobile phone, S/N: 11000210172226238. During a forensic examination of the phone, the following was learned:

- On March 13th, 2018 at 11:53 pm, Ranger visited the Facebook profile of John Doe;
- The phone was used to make over 46,000 Google searches, including the following terms, which were searched regularly:
    - "nude teen boys";
    - "nude teenager girl";
    - "nude teenager boy";
    - "pure nudist"; and
    - "familys nude".

3

The following items were manufactured out of the state of Maryland:

- VHS recorder and VHS tapes that Ranger used to record his sexual abuse of John Doe;
- The Fuji camera that Ranger used to record his sexual abuse of John Doe;
- Fujifilm XD Card, serial # 8si623ba443;
- eMachines desktop computer Model T1120, serial # QLM2130001056;
- Geek Squad flash drive, serial # BE0807NHDB;
- Three (3) Maxell flash drives;
- Dane-Elec flash drive; and
- SanDisk flash drive, serial # SDCZ35002G.

Additionally, the visual child pornography found in Ranger's storage unit, other than that which he produced, was transported in or affecting interstate or foreign commerce, and was produced using materials that had been transported in or affecting interstate or foreign commerce.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case

_11/1/2018_
Date

_[signature]_
Glen Ranger

I am Mr. Ranger's attorney. I have carefully reviewed the statement of facts with him. He acknowledges it is true and correct and he knowingly and voluntarily agrees to it.

_11/1/2018_
Date

_[signature]_
Kirsten Hopkins, Esq.
Counsel for Glen Ranger

4